**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Nancy Buccina,                                      Case No. 3:14CV2434

         Plaintiff

         v.                                           **ORDER**

Linda Ann Grimsby,

         Defendant

         This is a personal injury case arising from a boating accident near the mouth of the Maumee River. The case, as to which, I have previously held, admiralty jurisdiction applies, *Buccina v. Grimsby,* 2016 WL 157780 (N.D. Ohio) (overruling defendant's motion for summary judgment); *Buccina v. Grimsby*, 96 F. Supp. 3d 706 (N.D. Ohio 2015) (overruling defendant's motion to dismiss), will proceed to trial shortly; pending are several motions in limine. This order states my rulings on those motions.

**1. Plaintiff's Motion to Allow Rebuttal Witness (Doc. 39).**

         Plaintiff wants her treating physician, Dr. Alexander Debonnet, to testify in rebuttal of defendant's expert's testimony that plaintiff requires no further treatment as a result of the injuries she sustained from the accident. Defendant opposes the motion, principally on the basis of the untimeliness of her disclosure of this witness as an expert.

         A treating physician is generally a *fact* witness as to diagnosis, prognosis, and treatment, *see*, *e.g.*, *St. Vincent v. Werner Enterprises, Inc*., 267 F.R.D. 344, 345 (D. Mont. 2010) ("A treating

1

physician is not considered an expert witness unless the testimony offered by the treating physician goes beyond care, treatment, and prognosis."). To be sure, such testimony necessarily reflects the doctor's training and experience as to matters typically beyond the jury's ken, but that does not bring his opinions within the requirements of Fed. R. Civ. P. 26. *Id.*

Given the fact that a major dispute in this case is the extent to which, if any, of plaintiff's injuries from the accident have ongoing consequences, Dr. Debonnet's testimony is both relevant and material to an issue that defendant will be raising at trial. Allowing such rebuttal is entirely proper and permissible.

Motion granted.

**2. Defendant's Motion to Limit the Testimony of Neil Schechter, etc. (Doc. 44).**

Dr. Neil Schechter is, *inter alia*, plaintiff's causation expert who, to the requisite degree of medical certainty, attributes an "end plate compression fracture" to the accident, and opines that, "likely it did heal."

Plaintiff contends that the accident caused not only that injury, but aggravated a pre-existing herniated disc condition and, that, as a result, she continues to be in pain and in need of treatment.

The second part of this motion seeks to bar any testimony by Dr. Schechter that the accident caused the disc herniation. As I understand plaintiff's response, she does not claim the accident caused that condition – merely that the accident made its effects, in terms of pain and need for treatment worse. This Dr. Schechter may do, as he attributes, to a reasonable degree of medical certainty, plaintiff's complaints of continuing pain to aggravation of her pre-existing herniated discs.

Motion overruled.

**3. Defendant's Motion in Limine to Exclude Testimony of John Deck III. (Doc. 46).**

Plaintiff's expert John Deck has expressed opinions on the cause of the wave (wake) the defendant's boat hit; the maximum height (three feet); and the boat's unsafe operation in violation of Inland Navigation Rules 6 (safe speed), 7 (risk of collision), and 8 (action to avoid collision) (Inland Rules).

The defendant does not challenge Mr. Deck's qualifications. Instead, she principally argues that the Inland Rules, 33 U.S.C. § 2001, *et seq.*; 33 C.F.R. § 83.01, *et seq.*, apply only to collisions between vessels, and that any testimony based on the Inland Rules is not appropriate *vis-a-vis* this single-boat accident. Defendant also argues that Deck's testimony that her speed should have been that of a no-wake zone is inadmissible, as the evidence is, at best, conflicting as to whether this was a no-wake zone.

First, I find whether this was a no-wake zone is immaterial; what matters is how fast defendant should have been going to maintain due regard for safety. To use the speed limits of a no-wake zone as a benchmark, if the conditions, regardless of whether operation was occurring in a no wake zone or not, made safe operation at that speed necessary.

Second, with regard to the application of the Inland Rules: I agree that I should place some limits on Mr. Deck's proposed testimony, but I disagree that I should exclude the proffered testimony entirely.

The law in our Circuit as to the application of the Inland Rules is not as clear-cut as plaintiff suggests. Nonetheless, I agree that the better approach is to apply the Inland Rules to incidents such as this, rather than restricting their scope to vessel-on-vessel collisions. *Compare Matheny v. T.V.A.*, 523 F. Supp. 2d 697, 711 (M.D. Tenn. 2007) (applying Inland Rules to capsizing of small craft by tugboat's wake), *rev' d in part on other grounds*, 557 F.3d 311 (6th Cir. 2009) (not discussing or

deciding issue), *with Vanderpool v. Edmonson*, 2005 WL 5164857, \*3 (E.D.Tenn.) (holding Inland Navigation Rules "were not created and not designed to protect swimmers in the water"); *see also Hercules Carriers, Inc. v. Claimant State of Florida, Dep't of Transp.*, 768 F.2d 1558, 1566-68 (11th Cir. 1985) (applying Inland Rules where vessel collided with bridge); *Caravel/Woodwind Charters, Inc. v. Tahoe Keys Marina, LLC*, 438 F. Supp. 2d 1174, 1752-56 (E.D. Cal. 2006) (applying Inland Rules where pleasure boat collided with submerged concrete slab); *Grelewicz v. Kuchta*, 2006 WL 2632071, \*3-4 (N.D. Ill.) (applying Inland Rules where pleasure boat collided with sandbar).[1]

This is not, however, to say that all of Mr. Deck's opinions are admissible. While I believe the jury may be instructed that the Inland Rules set legal standards for vessel operators, and informed as to which Rules applied, it is not appropriate for any expert to tell the jury what the law is.

Moreover, I do not believe that it would be appropriate to permit the expert to testify that defendant violated the applicable Inland Rules. Instead, he may give his opinion re. the *conditions*, but not the legal consequences of the defendant's actions in the face of those conditions. He can describe the risks that they create, but it is for the jury to decide, in the end, whether defendant negligently violated the standard of care as defined by the Inland Rules.

While the Inland Navigation Rules define the standard of care, whether defendant breached any of the Rules and was negligent is not for him to say, but for the jury to determine.

---

[1] As further support for my holding that the Rules apply here, this case involved a passenger in a vessel. In this era when far more pleasure craft than commercial vessels move upon many of our inland navigable waters, it makes sense, in the interest of the safety of all who go upon those waters, to hold anyone operating a vessel to the same rules of the road. I see no reason to restrict provisions dating to the late nineteenth and early twentieth centuries, *e.g.*, *The Ashley*, 221 F. 423 (2d Cir. 1915) (applying Inland Rules) – when commerce, not pleasure, ruled the waves – solely to vessels risking collision of other vessels

Motion denied in part and granted in part.

**4. Defendant's Motion in Limine to Exclude Testimony of Marie Roy. (Doc. 47).**

Plaintiff's attorney failed to comply with his obligation to make a timely disclosure of an email that the third person in the defendant's boat, passenger Marie Roy, had sent to plaintiff about three weeks after the accident.[2] Instead of being produced when requested in defendant's Request for Production, the email came to defendant's attorney from plaintiff's attorney six weeks after Ms. Roy's deposition. Plaintiff's counsel finally gave it to defendant's attorney as he was about to depose Mr. Deck.

The untimely disclosed email recounts Ms. Roy's recollections of the incident and events leading up to it.[3] According to defendant it contains useful impeachment evidence: namely:

> the boats passing us were all m uch larger and not considerate of passing a smaller boat. We went at a good clip, but the much larger boats were passing us without a second thought causing us to get hit by their wakes. At one point we were passed by the coast guard and we waived (*sic*). . .
> . . . Shortly after passing the coast guard, another larder boat passed us on the left, leaving a quite large wake. We took it head on ......(*sic*) flying over it. . . . Nancy was sittin on the front leeft side and flew up off the seat abou ....3 feet. The boat rising up to meet her as she was landing on the seat,(*sic*)I(*sic*) the she rose again about a foot and landed on the seat. The third bounce left her on the floor of the boat.

(Doc. 47 at 2).

---

[2] I reject plaintiff's attorney's hair-splitting and seemingly after-the-fact-efforts to justify his failure, on the basis of a strained reading of the applicable Rules, to disclose the email. On the other hand, I find no basis, at this point, for concluding that nondisclosure was deliberate.

[3] I note that plaintiff's attorney does not meaningfully contend that plaintiff procured the statement at his behest (in which case, it would have been attorney work product, and not subject to production. *Hickman v. Taylor*, 329 U.S. 495 (1947)). Plaintiff's attorney doesn't make that argument, so I will not consider whether the statement was non-disclosable *ab initio*.

Defendant alleges that, had she received this email in a timely manner, it would have been useful not only to impeach Ms. Roy's testimony (in some generally unspecified way), but also would have provided a possible lead to a third party defendant (namely, the big boat that left the wake).[4]

I do not find defendant's arguments about prejudice sufficiently persuasive to justify complete exclusion of Ms. Roy's testimony. To be sure, her account may differ from her later version (that the boat hit a three foot wave, without any reference to the wave being the wake of a single larger boat). But the conditions as described when that reference is kept in context are hardly favorable to defendant's contention that she was operating her boat with due care to the safety of her passengers, her own safety, and that of other nearby boats (regardless of how negligently others may have been).

Indeed, in its entirety the account in Ms. Roy's email indicates, *inter alia*, that defendant was reluctant to go out if it were windy (with wave action possibly less troublesome than she was to encounter); defendant had some difficulty even getting the boat away from the dock; and, even before the accident, "the boats passing us were all much larger and not considerate of passing a smaller boat. We went at a good clip, but the much larger boats were passing us without a second thought causing us to get hit by their wakes." (*Id.*).

To the extent that defendant truly believes not calling some portion of this message to the jury's contention might really be harmful, I will grant leave to her to take – entirely at the expense

---

[4] Defendant's arguments about missing out on a possible third party defendant is speculative: there is no reason fairly to conclude that Ms. Roy would have noticed, much less remembered, the name of the boat as it passed by. I find no reason to accept the claim of prejudice on the basis of this contention.

6

of defense counsel – a limited supplemental deposition of Ms. Roy (with plaintiff being able to put other portions to her as well).

If counsel desires to pursue that course, he shall promptly undertake to make arrangements to do so, perhaps by long-distance video. If necessary, I shall entertain a motion to vacate the current trial date to enable that to occur, but I will not change the trial date unless counsel persuades me he acted with all due diligence to arrange the supplemental deposition, but was not able to do so before the trial date.

There being, despite the failure of plaintiff's counsel to fulfill his obligation to produce the email, no plausible or perceptible risk of *bona fide* prejudice, motion denied.

**5. Plaintiff's Motion in Limine to Prelude Application of *Robinson v. Bates*. (Doc. 49).**

As separate order will issue as to this motion.

## Conclusion

For the foregoing reasons, it is

ORDERED THAT:

1. Plaintiff's Motion to Allow Rebuttal Witness (Doc. 39), be, and the same hereby is granted;

2. Defendant's Motion to Limit the Testimony of Neil Schechter, etc. (Doc. 44) be, and the same hereby is denied;

3. Defendant's Motion in Limine to Exclude Testimony of John Deck III. (Doc. 46) be, and the same hereby is granted in part and denied in part; and

4. Defendant's Motion in Limine to Exclude Testimony of Marie Roy. (Doc. 47) be, and the same hereby is denied.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge