# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Nancy Buccina, *et al.*,

    Plaintiffs,

    v.

Linda Ann Grimsby,

    Defendant.

Case No. 3:14CV2434

ORDER

    This is a case within this court's admiralty jurisdiction in which the jury returned a verdict for the defendant, Linda Grimsby–the owner and operator of a pleasure craft in which plaintiff, Nancy Buccina, was a bow seat passenger. The suit arises from personal injuries Ms. Buccina suffered after being forcibly lifted from the boat when it struck a three-foot wake/wave despite defendant's efforts to reduce from "planing" to "idle" speed and swerve to avoid hitting the wake/wave head on.

    Pending is the plaintiffs' motion for a new trial under Fed. R. Civ. P. 59(a) and/or a Motion for Judgment Notwithstanding the Verdict under Fed. R. Civ. P. 50(a). (Doc. 129).

    For the reasons that follow, I grant the motion.

## Background

### Factual Background

    The accident occurred on June 10, 2012, as Ms. Grimsby was operating her seventeen-foot boat downstream on the Maumee River towards Lake Erie. A Ms. Marie Roy was also a passenger.

According to plaintiffs, the Maumee River was crowded with boat traffic that particular day, and as traffic became congested, the boats created choppy wakes/waves as high as two feet. As the defendant's boat neared the lake, the number of vessels and the wakes/waves it encountered grew increasingly larger.

Plaintiffs further allege that at a certain point on the Maumee River, defendant encountered an area where multiple larger vessels were creating wakes/waves directly ahead of their boat's path. Suddenly, according to plaintiff, the boat "struck a wave or wake and pitched violently downward which caused Plaintiff Buccina to be thrown up from the seat in the open bow seating area." (Doc. 1, ¶ 12). Then, "[w]hile in motion, the Pleasure Boat pitched upward as Plaintiff Buccina was coming back down due to gravity." (*Id.*). As a result, Nancy's buttocks compressed against the pleasure boat's bow seat, resulting in her injuries.

Just before striking the wake/wave, defendant claims she turned the boat slightly and slowed down, but despite her efforts, she could not avoid striking it.

Of significance to the pending motion and, specifically, to the issue of liability, is the boat's speed. The parties' estimates of the boat's speed vary, with Ms. Buccina and Ms. Roy estimating it to have been in excess of twenty miles per hour and defendant contending her speed was less. Ms. Roy testified that shortly before the accident, she told defendant to be careful. Defendant maintained speed as the boat approached the wake/wave. In other words, defendant did not slow down to idle speed as the boat approached the wake/wave.

After the impact, Ms. Buccina said she needed medical treatment, so defendant drove the boat to the Toledo Coast Guard station. On-duty Coast Guard personnel helped Ms. Buccina out of

2

the boat, onto a gurney, and into an ambulance, after which she was taken to the hospital for treatment.

**Procedural Background**

Ms. Buccina and her husband, Scot Buccina, filed their complaint on November 3, 2014, claiming that defendant's negligent operation of the boat caused their damages. Specifically, plaintiffs assert claims of negligence, negligence *per se*, gross negligence, reckless misconduct, and loss of consortium.

In December, 2016, I held a jury trial. The jury concluded defendant was not negligent in her operation of the boat and, therefore, not liable for plaintiffs' damages.[1]

Plaintiffs now seek a new trial on the basis that: 1) I made errors of law by refusing to apply specific Inland Navigation Rules, to give a negligence *per se* instruction, and allow admission of negligent navigation; 2) the jury's verdict is against the manifest weight of the evidence; and 3) defense counsel included an improper argument during closing argument.

On review of the parties' briefs, the transcript,[2] and my own recollection and notes, I conclude that the jury's verdict is against the weight of the evidence, and, accordingly, I grant the plaintiffs' motion for a new trial.[3]

---

[1] Because the jury found defendant was not negligent, it did not reach causation or damages.

[2] I note that neither party requested a copy of the trial transcript. As such, I reviewed a draft version of the trial transcript and the citations included below are to that draft transcript. Should either party want to review the transcript, he or she may order a final version.

[3] As discussed below, I accept the plaintiffs' argument that the jury verdict is against the manifest weight of the evidence as the basis for my decision to grant a new trial. As such, I do not discuss the remaining arguments presented by plaintiffs in support of their motion.

**Standard of Review**

A motion for a new trial under Federal Rule of Civil Procedure 59 may be granted "when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.,* the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996).

As a trial judge, my authority to grant a new trial pursuant to Rule 59(a) "is large." *Gasperini v. Ctr. for the Humanities, Inc.*, 518 U.S. 415, 433 (1996); *see also id.* ("'The trial judge in the federal system,' we have reaffirmed, 'has . . . discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence.'") (quoting *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 540 (1958)). In the Sixth Circuit, "the disposition of a motion for a new trial is committed to the sound discretion of the trial judge." *Luck v. Baltimore & Ohio R.R. Co.*, 510 F.2d 663, 668 (6th Cir. 1974).

When ruling on a Rule 59 motion, I must view all contested facts in favor of upholding the jury's verdict and avoid completely making credibility assessments or weighing the evidence. *E.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

**Discussion**

Because this case arises within this Court's admiralty jurisdiction, substantive maritime law applies. *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986).

The elements of a negligence claim under maritime law mirror the elements of a common law negligence claim–duty, breach, causation, and damages. *Hartley v. St. Paul Fire & Marine Ins. Co.*, 118 F. App'x 914, 919 (6th Cir. 2004) ("[U]nder the general maritime law, the elements of

4

negligence are generally the same as a common law negligence action, *i.e.* duty, breach, causation and damages."); *see also In re: Inland Marine Serv., Inc. v. Estates of Stack*, 183 F. Supp. 3d 844, 851 (S.D. Ohio 2016); *Cornucopia Cruise Line, Inc. v. Cummings Marine, Inc.*, 2012 WL 786836, *5 (W. D. Tenn.) ("'[N]egligence is an actionable wrong under general maritime law,' and its elements are 'essentially the same as land-based negligence under common law.'") (quoting *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005)).

Thus, plaintiffs needed to establish: 1) the existence of a duty of care owed by defendant to Ms. Buccina; 2) a breach of that duty by defendant; 3) a causal connection between the breach and the resulting injury; and 4) damages. *In re: Inland Marine Serv., Inc., supra,* 183 F. Supp. 3d at 851.

Further, the Inland Navigation Rules, 33 C.F.R. § 83.01 *et seq.*, "apply to all vessels upon the inland waters of the United States." 33 C.F.R. § 83.01(a). The Rules "impose a duty of care on vessel owners and operators to operate such vessels under the 'rule of good seamanship' and in a safe and seaworthy manner." *In re: Inland Marine Serv., Inc., supra,* 183 F. Supp. 3d at 851 (internal citation omitted).

I am persuaded, on the basis of the undisputed facts and testimony presented at trial, that the jury could reach only one result, and that is not the result it reached on the issue of liability.

**A. Duty**

First, as evidenced by my instruction to the jury, there is no dispute that defendant owed a duty as a matter of law to Ms. Buccina–as well as the other passenger–to operate her boat safely. *See, e.g., Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959).[4]

---

[4] As I instructed the jury, "I instruct you as a matter of law that Ms. Grimsby owed the Buccinas the duty to operate her boat safely." (*See* Jury Instructions).

Therefore, the only remaining issue with respect to the jury's verdict is whether defendant breached that legal duty–namely, whether she operated the boat safely (*i.e.*, with due regard for foreseeable risks)–which I discuss next.

**B. Breach**

As plaintiffs emphasize, "[f]oreseeability is the alpha and omega of this motion and fatal to Defendant's opposition and the jury's verdict." (Doc. 134, 11). I agree.

Foreseeability–the essential question when determining breach–"'does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred.'" *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 540 (6th Cir. 1990) (quoting *Green v. River Terminal Ry. Co.*, 763 F.2d 805, 808 (6th Cir. 1985) (internal citation omitted)). Instead, "[a] harm is a foreseeable consequence of an act or omission if it 'might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission.'" *Cornucopia Cruise Line, Inc., supra,* 2012 WL at *5 (quoting *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 211-12 (5th Cir. 2010) (internal citation omitted)).

Here, the jury reached a seriously erroneous result with respect to breach–namely, whether defendant should have foreseen or anticipated the harm caused by the boat's impact with the wake/wave.[5] To conclude that defendant was not negligent in her operation of the boat, the jury must have concluded that a reasonable person in defendant's position would not have foreseen this consequence–the impact and plaintiff's injury–as a probable result of her operation of the pleasure boat at planing speed despite the water conditions (*i.e.,* the number of other vessels in the water and

---

[5] I note that to find breach, it was not necessary that defendant foresee exactly how this particular incident and resulting harm would occur. What is required is that a reasonably thoughtful person would have anticipated that an act or failure to act would likely result in harm.

the increased wakes/waves formed directly in the pleasure boat's path) and the warnings of her passengers. Based on the testimony at trial, this conclusion is against the manifest weight of the evidence, thus warranting a new trial.

First, defendant knew that a wake/wave similar to that which the pleasure boat struck was foreseeable based on the knowledge she gained from boating safety courses. At trial, defendant testified about several boating safety courses taught by the Coast Guard and the Oakland County Police Department. Those courses discussed safety protocol and provided instruction on maintaining safe speed and approaching wakes/waves at appropriate speeds and angles to avoid potential harm.

Completion of these boating safety courses shows defendant was aware of the potential harms that could result when encountering a wake/wave at a high speed. Specifically, defendant testified:

> Q. Did the course that you took on boating safety did they teach you that you shouldn't encounter a wake or a wave at a high speed?
>
> A. Yes.
>
> Q. And the reason is because it could result in injury to a person aboard the boat?
>
> A. Yes.

(Transcript, 21).

Further, defendant admitted that in one boating course, she learned that when the river is constricted with numerous vessels, this can impact the size of wakes and waves. Specifically, defendant testified:

> Q. So you knew on the date of the marine accident that even thought it might be smooth out on Lake Erie as you approach into the Maumee River the river waters may have higher wakes or waves because of boating activity?

A. That's correct.

Q. You understand the principle that when you get into a constricted water way the wake [produced] by passing pleasure boats can bounce up against sea walls an accordion [*sic*] back and accelerate the size of the wakes?

A. Yes.

Q. And you learned that from your boating safety courses, correct?

A. Yes.

Q. So you knew this before the marine casualty?

A. I knew it before the incident, yes.

(*Id.*, 25-26).

Based on her boating safety courses, defendant knew that increased vessel activity could increase the size of wakes, which is precisely what occurred here. These courses also provided defendant with ample knowledge of the appropriate manner in which to approach the wakes/waves in the Maumee River caused by the increased vessel activity. Defendant also knew that it was not safe to approach wakes/waves at a high speed; however, despite knowledge of the potential harms, defendant maintained planing speed instead of taking the reasonable course of action–pulling the throttle to idle speed.

Second, defendant knew that a wake/wave like that which the pleasure boat struck was foreseeable based on her prior experiences on the Maumee River. Specifically, defendant testified:

Q. Did you ever operate a boat on the [Maumee River] before this marine accident?

A. Yes, I have.

Q. And which boat did you operate on the Maumee River?

> A. I have operated the four [winds][6] in the Maumee River . . . .
>
> Q. How often did you operate the four winds on the Maumee River?
>
> A. Prior to this incident I probably operated it 7 to 12 times down the Maumee River.
>
> Q. When you operated in the Maumee River before this marine accident were the waters variable also, smooth, rough, choppy, that type of thing?
>
> A. Yes.
>
> Q. So you're familiar with the various states of the water conditions on the Maumee River before this accident?
>
> A. Yes.

(*Id.*, 23-24).

Defendant further demonstrated her knowledge of the Maumee River waters when she testified:

> Q. So you knew on the date of the marine accident that even thought it might be smooth out on Lake Erie as you approach into the Maumee River the river waters may have higher wakes or waves because of boating activity.
>
> A. That's correct.

(*Id.*, 25).

Because of this prior experience navigating the same boat on the Maumee River in variable water conditions, defendant should have anticipated the possibility of rough or choppy water conditions when she entered the Maumee River on the date of the incident, as well as the potential harms that could result.

Third, defendant's general boating experience and knowledge is instructive. Defendant testified about the possibility of encountering wakes:

---

[6] Of note, the "four winds" boat refers to the seventeen-foot pleasure boat at issue in this case.

> Q. And you knew that cabin cruisers would generally throw a wake?
>
> A. Yes.
>
> Q. And as you entered the river you anticipated see[ing] other boats on the river?
>
> A. I did.
>
> Q. And the boats on the river that day most would have been throwing wakes?
>
> A. Yes.
>
> Q. And so you knew before entering the river that if boats were operating in the river with you, they would be throwing wakes?
>
> A. Yes.
>
> Q. So you knew you should be on the look out for wakes thrown by other boats while you were operating the boat on plane?
>
> A. Yes.
>
> Q. Because you knew that wakes can make your boat bounce if you impact the wakes while your boat is on plane?
>
> A. Yes.

(*Id.*, 31-32).

Defendant also testified about her general knowledge of the effect that a boat's size, as well as its speed, has on the impact with a wake/wave. As to a boat's size, defendant testified:

> Q. And a small boat will react more to the action of wakes an[d] waves than your big boats?
>
> A. Yes.
>
> Q. A small boat will bounce more if it hits a small[er] wake than a big boat will?
>
> A. Yes.

Q. And you've experienced this in your own operation of pleasure boats before this accident?

A. Yes, I have.

Q. So you knew the effects of this 17 foot boat from the wake and wave action or impacting a wake and wa[ve] action before this accident?

A. Yes.

(*Id.*, 22).

As to a boat's speed, defendant testified:

Q. Do you believe that had you pull[ed] throttle back to idle speed and proceeded at that speed, when you contacted the wake, you would have hit that wake with as much force as you did when Nancy got hurt?

A. No.

(*Id.*, 34).

This testimony regarding defendant's general boating experience and knowledge shows that before entering the Maumee River, defendant anticipated seeing other boats and anticipated that those boats would be throwing wakes/waves. Defendant was also aware of the effect that her boat's size and speed would have on its impact with those anticipated wakes/waves. Even more important, defendant knew that impact with a wake/wave at planing speed could make the pleasure boat bounce, which is exactly what transpired in this case.

Finally, I point to Ms. Roy's testimony about the water conditions and her attempt to caution defendant to support my conclusion that the jury erred fundamentally in finding defendant was not negligent in her operation of the pleasure boat.

As to the water conditions that day, Ms. Roy testified that the water on the Maumee River was worse than it was on Lake Erie because of the increased number of vessels in the water. Ms. Roy recalled a lane of boats creating wakes/waves that were very close together, and she testified:

> Q. As you entered the mouth of the river, where it meets Lake Erie tell me how the water was at that time?
>
> A. Very choppy because there were huge boats in the water way, and they were going at a really good clip. And we were as well.

(*Id.*, 63).

Ms. Roy also testified that "there were a couple of times where we said, careful, there's a big wave coming, you know,ee [*sic*] that. But we were taking the wa[ves] head on or even to the side of our boat at a high speed." (*Id.*, 67).

As demonstrated above, the evidence presented at trial does not support the verdict; rather, the evidence shows–I believe indisputably–that the accident was foreseeable. In other words, the evidence clearly shows that the defendant, by the use of ordinary care, should have foreseen the risk of injury to persons on the boat. Defendant should have, but failed to, take precautions to avoid the risk. This failure to take such precautions to avoid the risk shows that defendant breached the duty owed to Ms. Buccina.

Given the general conditions as they then existed on the Maumee River, a reasonable person with defendant's knowledge and experience would have proceeded at a much lower, even an idle, speed well in advance of approaching the wake/wave that hit the boat and injured Ms. Buccina. A reasonable person would not, as defendant did, have maintained planing speed despite knowledge of the potential hazards of doing so.

Defendant anticipated encountering wakes/waves on the Maumee River. Defendant knew the impact increased boating activity would have on the size of wakes/waves. Defendant had operated the pleasure boat on the Maumee River prior to the incident and was familiar with the potential for variable water conditions and increased boating activity. And defendant knew the effect a boat's size and speed, particularly a high speed, would have on the impact with a wake/wave. Thus, a reasonable person in defendant's position would have taken appropriate action to avoid the wake (*i.e.,* slowed down to idle speed) long before she approached the wake that she ultimately struck. Defendant's failure to act reasonably clearly demonstrates breach.

Ms. Roy's testimony only buttresses this conclusion. Ms. Roy's recollection of the water conditions as choppy because of increased vessel traffic on the Maumee River, as well as her testimony about telling defendant to exercise care, demonstrates that defendant failed to operate the pleasure boat reasonably under the circumstances. Based on defendant's extensive boating experience and knowledge, as her own testimony shows, she should have foreseen the potential for impact with one of the many wakes/waves and the harm that could occur as a result of that impact. Again, defendant should have slowed to a much reduced, even idle, speed to avoid that impact with the wake/wave. Her failure to do so clearly demonstrates breach.

The only conclusion the jury could have reached in light of the testimony at trial is that Ms. Buccina's injury clearly could have been foreseen by defendant, and, therefore, defendant breached her duty of care.

Consequently, the jury's decision is not supported by the manifest weight of the evidence, and a new trial is proper.[7]

## Conclusion

On review of plaintiffs' motion for new trial, I conclude the jury lacked a legally sufficient evidentiary basis for its verdict in favor of defendant. It is, therefore,

ORDERED THAT: plaintiffs' motion for a new trial (Doc. 129) be, and the same hereby is, granted.

The Clerk shall forthwith schedule a telephone scheduling conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

---

[7] Federal Rule of Civil Procedure 59(a) provides that a district court may, in its discretion, grant a new trial "*on all or some of the issues* . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A) (emphasis added). Because I conclude that based on the evidence and testimony presented at trial, which, presumably, will be duplicative at the new trial, defendant clearly breached her duty of reasonable care owed to Ms. Buccina, there is simply no need to retry the issues of duty and breach. Thus, the new trial will address only the issues of causation and damages.